## Redman v. Craig

*Arthur J. Gatz*, for plaintiff.

*David Stahl*, for defendants.

PRICE, J., September 17, 1965.—Pursuant to Rule 19 of the Rules of the Court of Common Pleas of Allegheny County, this matter comes to the court on plaintiff's motion for judgment on the pleadings and the stipulation of all parties that the court may grant judgment on the pleadings to any party entitled thereto, whether plaintiff or defendants, and regardless of whether or not the party has or parties have filed a motion for judgment on the pleadings. This matter came on for argument and was presented to the assignment room judge on August 23, 1965.

Plaintiff, Wesley J. Redman, was appointed a patrolman in the Bureau of Police of the City of Pittsburgh, a city of the second class, on February 10, 1951, after successfully meeting all requirements of the law. There is no dispute concerning the validity of his appointment.

After almost 12½ years of service as a patrolman with what must be presumed to be an excellent, clear record, plaintiff was indicted in June of 1963 for aggravated assault and battery arising from an altercation with plaintiff's neighbors, in which plaintiff's wife was also assaulted by other persons or person. The details of this incident are not presented either in this proceeding, nor, apparently, in the presentation of charges to the trial board on June 4, 1965, the city arguing both now and before the trial board that plaintiff's subsequent conviction by jury of this charge, a misdemeanor, on October 31, 1963, in and of itself is a legal bar to plaintiff's continued employment as a patrolman.

The trial board, legally constituted and appointed,

heard the charge, which apparently was limited to plaintiff's record of conviction of a crime and the legal effects thereof. This trial board, consisting of one lieutenant and two patrolmen, refused to dismiss plaintiff from the bureau of police. Under date of June 4, 1965, the same date as the trial board action, defendant James W. Slusser, Superintendent of the Pittsburgh Bureau of Police, for himself and the other defendants, advised plaintiff by letter that plaintiff was no longer a police officer for the City of Pittsburgh, and that no future payrolls would be certified by defendants which bear plaintiff's name. Defendant Slusser's letter further advised plaintiff that plaintiff was no longer a patrolman, and plaintiff should not report for duty on June 4, 1965, or at any other future date.

On June 7, 1965, this issue was joined by complaint in mandamus, followed by an answer to the complaint and new matter, and final pleading of reply to new matter. Plaintiff's prayer for relief asks this court to order defendants to reinstate plaintiff to his rank of patrolman (more technically, this should be to recognize plaintiff's continued rank as patrolman), and to order the payment to plaintiff of his normal salary from June 4, 1965, to date.

The sole issue herein is whether or not a patrolman in the department of public safety of a city of the second class may be discharged without the affirmative action and recommendation of a duly constituted trial board upon conviction of a crime subsequent to a valid appointment as a patrolman. There is no valid statutory authority for distinctions between types of crimes, either by name or class, but it is important to recognize, and apparently all parties would concede, that a conviction prior to appointment as a policeman, without pardon, would bar a valid appointment or employment.

The Act of March 7, 1901, P. L. 20, art. 3, sec. 1, as amended, 53 PS §22532, regulating employes in the

department of public safety, provides, in its pertinent part, as follows:

"No person shall be employed in this department as a policeman or fireman who is not a citizen of the United States, or who has been convicted of crime, unless pardoned, or who cannot read and write understandingly in the English language, or who shall not have resided within the State at least one year preceding his appointment".

Plaintiff in this case argues that the Police Civil Service Act of July 9, 1963, P. L. 217, 53 PS §23537, provides that no policeman can be discharged unless a duly constituted trial board so recommends. This act provides, in its pertinent parts, as follows:

"No employe in the competitive class in any bureau of police in any city of the second class shall be removed, discharged or suspended for a period exceeding ten days as a penalty, or reduced in rank or pay without his written consent, except for just cause, which shall not be religious or political; nor, in any event, except by the decision of a court, either of trial or inquiry, duly determined and certified in writing to the mayor and approved in writing by the mayor: . . .

" . . .

" . . . Such charges may be of disability for service, in which case the court shall be one of inquiry, whose decision may be for the honorable discharge from the service of the person concerned; or, of neglect or violation of law or duty, inefficiency, intemperance, disobedience of orders, or unbecoming official or personal conduct, in which cases the court shall be one of trial, and its decision shall authorize the director of public safety to impose fines and pecuniary penalties, to be stopped from pay, or to suspend from pay or duty, or both, for a period fixed by them, not exceeding one year, or to dismiss from the service. . . ."

In the examination of this issue, it is important to

examine the original art. III, sec. 1, of the Act of March 7, 1901, P. L. 20, which, in its pertinent provisions, provided as follows:

"No person shall be employed in this department as a policeman or fireman who is not a citizen of the United States, or who has been convicted of crime, unless pardoned, or who cannot read and write understandingly in the English language, or who shall not have resided within the State at least one year preceding his appointment.

". . . .

"No policeman or fireman appointed under this act shall be dismissed without his written consent, except by the decision of a court either of trial or inquiry, duly determined and certified in writing to the city recorder, which court shall be composed of persons belonging to the police or fire force, equal or superior in official position therein to the accused. Such decision shall only be determined by trial of charges, with plain specifications made by or lodged with the director of the department of public safety, of which trial the accused shall have due notice, and at which he shall have the right to be present in person. The persons composing such court shall be appointed and sworn by the director of the department of public safety to perform their duties impartially and without fear or favor; and the person of highest rank in such court shall have the same authority to issue and enforce process to secure the attendance of witnesses, and to administer oaths to witnesses, and is possessed by any justice of the peace of this Commonwealth.

"Such charges may be of disability for service, in which case the court shall be one of inquiry, whose decision may be for the honorable discharge from the service of the person concerned; or, of neglect or violation of law or duty, inefficiency, intemperance, disobedience of orders, or unbecoming official or personal conduct,

in which cases the court shall be one of trial, and its decision may authorize the director of the department of public safety to impose fines and pecuniary penalties, to be stopped from pay, or to suspend from pay or duty, or both, for a period fixed by them, not exceeding one year, or to dismiss from the service".

Except for enlargement of the law herein pertinent as to civil service and trial board, or boards of inquiry selection and operation, all of which are calculated to insure protection of a patrolman in his employment from unrelated influences of a personal or political nature, the basic provisions remain *unchanged.*

Insofar as possible, the statutes must be interpreted and construed to effectuate the intention of the legislature, as directed by the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, and in particular to art. IV, secs. 51 and 52 of said act, 46 PS §§551 and 552, which read as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law".

". . . In ascertaining the intention of the Legislature

in the enactment of a law, the courts may be guided by the following presumptions, among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain;

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth;

"(4) That when a court of last resort has construed the language used in a law, the Legislature in subsequent laws on the same subject matter intend the same construction to be placed upon such language;

"(5) That the Legislature intends to favor the public interest as against any private interest".

Under such directions and in tracing the growth of these pertinent provisions, it seems clear that it *was* intended, that conviction of crime without pardon is a bar to initial appointment or employment as a patrolman, but just as clearly is discharge, dismissal, removal or suspension after valid appointment contingent upon a court of inquiry or trial board's action. The interpretation urged by defendants strains the reading of the language and the clear train of legislative intent in the adoption of the pertinent laws.

The court does recognize, however, the policy considerations that face defendants, as well as the public interest and welfare that may well be at stake in cases involving this interpretation. Such problems assume an arbitrary, capricious abuse by a court of inquiry or trial board of the power vested in it by the legislature. This cannot be presumed in the matter and issue now before the court. Defendants' remedy must be in legislative enactment, not judicial interpretation, and in the absence of a clear abuse of the legislature's vested power, it cannot be held that a court of inquiry

or trial board does not, and will not, protect the public's best interests and welfare in the discharge, dismissal, removal or suspension of police officers, at the same time as it protects the policeman who stands before it on charges.

Defendants urge Gagliardi v. Ambridge Borough, 401 Pa. 141 (1960), as a precedent to support their contention. An examination of Gagliardi, supra, reveals just the opposite, and also involves interpretation of a residence requirement imposed by local ordinance, a legislative enactment that has an entirely different background than the issue here before us. But after citing the Statutory Construction Act, supra, the court, at page 145, says:

"It appears to us from the language above-quoted ·(quoting the Act of May 4, 1927, P. L. 519, as amended, 53 PS §46179) that the Legislature intended that an individual, *in order to qualify for an appointment* as a policeman, must be a resident of the particular municipality, not only upon *the date of the filing of his application* but, also *on the date of his appointment.* Any other conclusion would be unreasonable". (Italics supplied.)

This is the Supreme Court of Pennsylvania's interpretation that is pertinent to this issue and concurs exactly with this court's conclusions. The reasoning, thereafter applies to residence as a *continued* requirement only by reason of local ordinance enacted pursuant to legislative authority.

Defendants also ask that this court either distinguish or overrule Casper v. Philadelphia, 55 Pa. Superior Ct. 266, (1913). This court can do neither. Casper, supra, involves the First Class City Code, Act of June 1, 1885 P. L. 37, art. 3, sec. 1, but involves the very same statutory language as is here involved, and the fact situation is exactly the same. At page 271, the court concluded:

". . . that on the case presented the mayor or director of the department of public safety was without authority to remove the complainant [policeman], the sentence of the police trial court not having authorized such action".

This court must also conclude that the attempted removal of plaintiff by defendants was unlawful and unjustified, and that an appropriate order must be entered compelling defendants to accept plaintiff as a patrolman, a rank he still holds rightfully and has held since February 10, 1951. Defendants must also be directed to pay plaintiff his normal compensation from June 4, 1965, to the date of compliance with the accompanying decree.

## DECREE

And now, to wit, September 17, 1965, upon finding by the court based upon the pleadings filed, and pursuant to motion for judgment on the pleadings filed by all parties, that plaintiff is:

1. A properly appointed patrolman or policeman in the Bureau of Police, Department of Public Safety of the City of Pittsburgh.

2. A proper employe in the above described position since February 10, 1951, to the present date.

3. Entitled to continue in said employment until proper lawful procedure may determine otherwise.

4. Being wrongfully deprived of his rightful compensation and position by unlawful action of defendants.

Now, therefore, it is hereby ordered, adjudged and decreed that defendants, individually, as department heads of their units of government of the City of Pittsburgh, and as representatives of the City of Pittsburgh:

1. Return plaintiff to his rightful position as above stated without delay.

2. Refrain from further interference by reason of

the issues herein raised with plaintiff's rightful employment.

3. Compensate plaintiff fully at his normal compensation for time lost by reason of defendants' wrongful actions, to wit, from June 4, 1965, to the date of plaintiff's return to duty.